UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| HARRY BURTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 16-377-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security[1], | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Harry Burton ("Burton") [Record No. 12] and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). [Record No. 14] The Commissioner's motion will be granted and the relief that Burton seeks will be denied for the reasons that follow.

**I.**

Burton filed an application for disability insurance benefits ("DIB") on August 20, 2013, alleging a disability onset date of February 8, 2009. [Tr. 303] Burton's claim was denied initially and on reconsideration. [Tr. 248, 256] He then requested an administrative hearing, which Administrative Law Judge ("ALJ") Bonnie Kittinger held on April 23, 2015. [Tr. 155, 263] The ALJ ultimately determined that Burton was not disabled from the alleged onset date

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

through the date that Burton was last insured (September 30, 2014). [Tr. 149] Burton's request for review by the decision from the Appeals Council was denied. [Tr. 1] The matter is ripe for review pursuant to 42 U.S.C. § 405(g).

Burton was 50 years old on September 30, 2014, the date on which he last met the insured status requirements of the Social Security Act ("Act"). [Tr. 303, 317] He has a high school equivalent education and past employment experience as a parts deliverer, maintenance man, forklift operator, assembly worker, and construction worker. [Tr. 322, 323] Burton alleges that he is disabled due to diabetes, neuropathy, depression, high blood pressure, high cholesterol, and back injuries. [Tr. 321]

Burton underwent lumbar fusion surgery in May 2012. He reported that he was doing well following the surgery during a post-operative visit with surgeon Dr. Steven Glassman in August 2012 and no longer had the significant back and leg pain that he had prior to the operation. [Tr. 547] Burton further indicated that he was "generally tolerating activities well." [*Id.*] Although Burton did not feel that he would be able to return to construction work, he did anticipate being able to work at something "medium duty," which "ma[de] sense" to Dr. Glassman. [*Id.*] Dr. Glassman further reported that Burton had full strength in all muscle groups and normal reflexes. [Tr. 549] Dr. Glassman concluded that Burton could lift 40 pounds but that he should avoid repeated stooping and bending. [*Id.*]

Dr. Joseph Lukins treated Burton for right shoulder pain in October 2013. [Tr. 744] Burton reported right shoulder pain and tingling and numbness in his hand. [*Id.*] Dr. Lukins noted Burton's previous "back fusion for which he is disabled." [Tr. 744] In December 2013, following a carpal tunnel release procedure, Dr. Lukins reported that Burton's shoulder had significantly improved and that his range of motion had improved. However, Burton still

reported pain. [Tr. 740] Dr. Lukins saw Burton again in January 2014 and indicated that Burton was "doing well after his carpal tunnel" and that his "shoulder symptoms [had] decreased." [Tr. 737]

In January 2014, Burton reportedly had "[e]xcellent shoulder strength" and, although he had limitation in range of motion in his spine, the physician found no weakness, sensory loss, or reflex asymmetry. [Tr. 914] In April 2014, Burton received treatment from the University of Kentucky Department of Orthopaedic Surgery and Sports Medicine Clinic. He complained at that time of shoulder pain and stiffness. [Tr. 1098] The physician reported that Burton demonstrated diffuse tenderness and decreased grip strength, but that x-rays of his right shoulder showed no acute fracture or dislocation. [Tr. 1099] The physician recommended physical therapy for his shoulder. [*Id.*]

Burton has been diagnosed with diabetes and was found to have elevated blood sugar. [*See, e.g.*, Tr. 561, 567] He saw Dr. Ayman Geneidy in October 2013 and reported bilateral lower extremity edema for approximately five years, recent excess proteinuria, and a renal cyst. [Tr. 676] Dr. Geneidy diagnosed chronic kidney disease and proteinuria, and suspected diabetic neuropathy. [Tr. 677] Burton received treatment for his diabetic conditions from an endocrinologist at University of Kentucky HealthCare in August 2014. [Tr. 833] The physician reported diminished sensation in both of Burton's feet. [Tr. 835] The physician continued Burton's current medications. [Tr. 844]

In November 2012, Burton reported that he was back to work in construction and that he had only occasional mild pain and numbness. [Tr. 553] Otherwise, he had no substantial complaints. [*Id.*] Additionally, he had normal gait and station. [Tr. 555] Burton later reported

that he was frustrated because no one would hire him, but indicated that he had been staying active and helping his friend with a new ceiling. [Tr. 589]

The state agency physicians concluded that Burton was not disabled from the alleged onset date of February 8, 2009. [Tr. 248] They acknowledged that Burton's ability to lift and carry objects was decreased and that Burton's limitations prevented him from performing some tasks. They concluded, however, that these limitations did not prevent him from performing all work-related activities. [*Id.*] Additionally, they found no evidence of significant damage to Burton's eyes, heart, liver, or kidneys caused by his high blood pressure and cholesterol or his diabetes. [*Id.*] The agency physicians were unable to locate "evidence of any other severe impairment that would prevent [Burton] from performing basic work activities on a daily basis." [*Id.*] They thus concluded that his condition was not severe enough to prevent him from working. [Tr. 249]

Burton stated during the administrative hearing that he is unable to work due to the neuropathy in his legs, arms, and hands. [Tr. 164] He testified that he is able to stand for 30 minutes before having to sit and is limited to lifting 25 pounds. [*Id.*] Burton denied experiencing any side effects from his medications. [*Id.*] He also reported pain in his hands and feet. [Tr. 167]

Burton testified that he had driven 75 miles in a day since the alleged onset date of disability. [Tr. 160] He reported that, two years ago, he had volunteered at his wife's grandparents' restaurant as a short-order cook for three to five hours per day for approximately four weeks. [Tr. 161-62] Burton testified that he had to stop volunteering because he could not stand for the time required. [Tr. 162] Burton further testified that, the day before the hearing, he spent the majority of the day preparing, sanding and spray-painting a mailbox. [Tr.

165] He testified that he performs some household chores, such as doing the dishes, and helping with dinner preparations. [Tr. 166] However, according to Burton, his back pain prevented him from vacuuming and doing yard work. [*Id.*] He also asserted that he requires some assistance with his personal hygiene. [Tr. 167]

The Vocational Expert ("VE") appearing at the administrative hearing testified that a hypothetical person of the claimant's age, education, and previous work experience would be able to perform light work with certain limitations and could perform work existing in the national economy. [Tr. 182] Specifically, such an individual could perform light unskilled work such that performed by a cashier or counter clerk. [Tr. 183]

The ALJ stated that Burton last met the insured status requirements of the Act on September 30, 2014, and did not engage in substantial gainful activity during the relevant time period. [Tr. 143] She found severe impairments of diabetes mellitus, degenerative disc disease, diabetic neuropathy and nephropathy, chronic kidney disease, a partial thickness tear and arthritis in the right shoulder, and obesity. [Tr. 144] However, the ALJ concluded that Burton did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. [Tr. 145]

"After careful consideration of the entire record," the ALJ determined that Burton had the residual functional capacity ("RFC") to perform light work, except:

> he is able to push/pull with his upper and lower extremities no more than frequently; he is unable to climb ropes, ladders and scaffolds, but can occasionally climb ramps/stairs, occasionally balance, stoop, crouch, kneel and crawl; should avoid concentrated exposure to whole body vibration and should perform no more than frequent bilateral overhead lifting; and he should be allowed to change positions or alternate sitting and standing at 45 minute intervals.

[*Id.*] The ALJ discussed Burton's testimony regarding the pain that he experienced and his general limitations but concluded that he was not entirely credible because "the objective medical evidence does not substantiate the level of severity he describes or the limitations he attributes to his condition." [Tr. 145-46]

The ALJ then evaluated the objective medical evidence relating to Burton's shoulder condition, diabetes, and kidney disease. [Tr. 146-47] She assigned some weight to Dr. Glassman's opinion that Burton should not lift over 40 pounds, but concluded that a 20-pound limit was more appropriate. [Tr. 147] Additionally, she determined that Dr. Lukins's opinion (i.e., that Burton was disabled due to his back fusion) was not entitled to any weight because it only addressed the ultimate issue of disability, which is reserved to the Commissioner, and concluded that his opinion was unsupported by the record. [*Id.*] Finally, she discussed a prior ALJ decision from 2011 and concluded that Burton's condition was largely the same since this decision. However, because of his lower extremity edema that prevented Burton from standing for long periods, an additional sit/stand option was warranted. [*Id.*]

The ALJ concluded that Burton was unable to perform his past relevant work. [*Id.*] Notwithstanding this finding, the ALJ determined based on the testimony of the VE that there was work existing in substantial numbers in the national economy that Burton could performed. [Tr. 148] Accordingly, she determined that Burton was not disabled during the relevant period. [*Id.*]

## II.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)

(citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the requirements of the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment that is expected to last for at least twelve months and that meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of disability based on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional capacity ("RFC") and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312

Fed. Appx. 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Burton raises two claims of error. First, he argues that the ALJ erred by failing to consider all of the evidence of record. Additionally, Burton contends that the ALJ's evaluation of his diabetes, neuropathy, kidney disease, and shoulder condition is not supported by substantial evidence. However, the ALJ properly considered all relevant evidence. Her decision is supported by substantial evidence.

An ALJ is required to consider all evidence of record when making a determination. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014). But "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507 (6th Cir. 2006) (citing *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

Burton argues that the ALJ erred by ignoring portions of the record relating to his diabetes, neuropathy, kidney disease, and right shoulder condition. However, the ALJ's written decision does not support the contention that she ignored this evidence. First, the ALJ

stated that she had "careful[ly] consider[ed] [] the entire record." [Tr. 145] *See Hillard v. Sec'y of Health and Human Servs.*, No. 94-2212, 1996 WL 78311, at *3 (6th Cir. February 22, 1996) ("[T]he ALJ stated that he 'review[ed] the evidence of record.' Absent any basis to question the veracity of this statement, this court must accept it at face value."). Additionally, she specifically considered the conditions in her written decision. The ALJ concluded that each of these conditions was a severe impairment at the second stage of the analysis. [Tr. 144] She also discussed the conditions during her discussion of Burton's RFC, but concluded that the record did not support a finding that these conditions rendered Burton disabled. [Tr. 146] There is no reason to doubt that the ALJ considered all of the evidence in the record, regardless of whether she specifically discussed every portion of it in her written decision. Burton's challenge on this basis fails.[2]

Burton also argues that the ALJ's decision is not supported by substantial evidence. But he fails to expand on this argument beyond stating that the ALJ's "evaluation of Mr. Burton's diabetes, neuropathy, kidney disease and right shoulder condition is not based on the record as a whole." [Plaintiff's Brief, p. 12] Burton seems to argue that the ALJ erred in

---

[2] Burton also seems to argue that the ALJ ignored the opinion of one or more treating physicians. He cites the treating physician rule, and states that the ALJ "ignored a number of specialists Mr. Burton saw for his medical conditions." [Plaintiff's Brief, p. 12] However, Burton does not identify which specialists the ALJ allegedly ignored or which specialists were treating physicians. Without this information, the Court cannot evaluate his treating physician argument and it is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

making her RFC determination. However, there is substantial evidence to support the ALJ's conclusions.

Substantial evidence exists when a "reasonable mind might accept" the relevant evidence "as adequate to support a conclusion." *Kirk v. Sec. of Health and Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). As long as there is substantial evidence to support the ALJ's decision, it will be upheld, "even if there is substantial evidence in the record that would have supported an opposite conclusion . . . ." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (citation omitted). Additionally, the ALJ is permitted to "consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ determined that Burton had the RFC to perform light work with a number of limitations that accounted for his medical conditions. [Tr. 145] She found that Burton's statements regarding the severity of his conditions and the limitations that they imposed were not entirely credible. She discussed his various conditions, and concluded that the evidence did not support a finding that Burton is disabled. This conclusion is supported by substantial evidence.

The objective evidence supports the ALJ's conclusion that Burton's symptoms were less severe than he alleged. Following shoulder surgery in May 2012, Burton's treating surgeon Dr. Glassman reported that Burton had full strength in all muscle groups and normal reflexes. [Tr. 549] Similarly, in January 2014, Dr. Lukins reported that Burton was "doing well" after his surgery and that his shoulder symptoms had decreased. [Tr. 737] Additionally, several physicians confirmed that Burton had normal gait throughout the alleged period of disability. [*See, e.g.*, Tr. 555, 931]

Burton's reports to his physicians are inconsistent with his assertions of disabling limitations. Following his surgery, he reported that he no longer had the significant back and leg pain that he had had prior to the operation and was "generally tolerating activities well." [Tr. 547] Burton reported in November 2012 that he was back to work in construction and that he had only occasional mild pain and numbness. [Tr. 553] Based on Burton's statements regarding his condition, Dr. Glassman felt that Burton was capable of returning to medium exertion work and was able to lift 40 pounds. [Tr. 547-49]

Burton's daily activities during the alleged disability period contradict his assertions that he is unable to perform light work. He reported that he had been working in construction, and also that he had been staying active and was helping a friend with a new ceiling. [Tr. 553, 589] Additionally, he testified that he had driven 75 miles in a day since the alleged onset date of disability. [Tr. 160] He also reported volunteering at his family's restaurant, which required him to work for three to five hours a day for about four weeks. [Tr. 161-62] The day before the administrative hearing, Burton had prepared, sanded and painted a mailbox. [Tr. 165] Additionally, he was able to complete some household chores and assist with dinner preparations. [Tr. 166]

While the record does reflect that Burton has obtained treatment for his conditions, he has not sufficiently explained how these conditions render him disabled. Instead, there is substantial evidence in the record to support the ALJ's conclusion that Burton is able to perform a light range of work with stated limitations to account for his conditions.

**IV.**

Burton has failed to demonstrate that the ALJ ignored evidence from the record. Additionally, the ALJ's determination is supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

1. The Commissioner's Motion for Summary Judgment [Record No. 14] is **GRANTED**.

2. The Plaintiff's Motion for Summary Judgment [Record No. 12] is **DENIED**.

3. The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 19th day of April, 2017.

Signed By:
*Danny C. Reeves* DCR
United States District Judge